J. G. WHITLATCH, Appellee, v. CITY OF IOWA FALLS, Appellant.

MUNICIPAL CORPORATIONS:   Streets—Negligence—Guard Rails on
1   Bridge Approach Built by County.   A city may be guilty of action-
able negligence in failing to erect guard rails along a steep and
narrow approach to a bridge on a city street, even though the said
bridge and approach were constructed *by the county*.

HIGHWAYS:   Negligence—Driving on Left-Hand Side.   The act of
2   driving a vehicle on the left-hand side of a highway becomes quite
immaterial if such act was not the proximate cause of the resulting
injury.

MUNICIPAL CORPORATIONS:   Streets—Nonnecessity to Show No-
3   tice of Defect.   No instructions are required as to *notice* to a city
of the necessity for guard rails along a steep and narrow bridge
approach when the record justifies a finding that the reasonable
necessity for such guard rails dated from the original construction
and use of said approach.

NEGLIGENCE:   Proximate Cause—Combination of Causes.   When two
4   causes combine to produce an injury to a traveler on the highway,
both of which are in their nature proximate, the one being a
culpable defect in the highway, and the other some occurrence for
which neither is responsible, the municipality is liable if the injury
would not have been sustained but for such culpable defect.   So
held as to the failure to erect guard rails along a narrow bridge
approach.

TRIAL:   Conduct of Trial—Separate Viewing of Premises by Jury.
5   Conveying the jurymen in separate conveyances and in care of
separate officers to the *locus in quo*, without any showing of prej-
udice, does not constitute reversible error.

Headnote 1.   28 Cyc. p. 1347.   Headnote 2.   28 Cyc. p. 1417.   Head-
note 3.   28 Cyc. p. 1387.   Headnote 4.   28 Cyc. p. 1410.   Headnote 5.
4 C. J. p. 954.

*Appeal from Hardin District Court.*—G. D. THOMPSON, Judge.

DECEMBER 11, 1924.

ACTION against a municipal corporation, to recover dam-
ages for personal injuries.   The facts are fully stated in the

opinion. There was a verdict and judgment for plaintiff. Defendant appeals.—*Affirmed*.

*Bryson & Bryson* and *Lee & Garfield*, for appellant.

*H. H. Uhlenhopp* and *W. W. White*, for appellee.

Stevens, J.—I.  Shortly after appellee and his son left the Swift packing plant, where they were employed, in the southeast part of Iowa Falls, about 6:30 on the evening of December 5, 1921, to go to their home in the northwest part of the city, in a Ford automobile, the car went off the grade in the street, partially overturning, and severely injuring appellee. This action is for damages. The route of travel was several blocks north on Depot Street, and then west on Pierce Street. The accident occurred a short distance west of a concrete bridge on Pierce Street. The approach to the bridge from the east is down a decline. The roadway of. the bridge is 18 feet in width. The north side of the grade west of the bridge is flush with the north bannister thereof, the side being steep. The grade on the south side angles toward the center, and, at the point where the accident occurred, the smooth surface of the roadway was but 7 feet and 5 inches in width. The traveled track was near the center of the grade. 43 feet west of the bridge there was a depression or rut in the, south side of the grade, which had been washed out by the water, and another similar depression or rut 17½ feet farther west. The elevation .of the grade was 7.5 feet, and the distance from the top thereof to the surface of the ground at the base was 11 feet. The roadway was graveled, and, except for the depressions or ruts referred to, was smooth and in good condition for travel. Save for the ruts or depressions referred to, the grade was somewhat wider than stated above. According to the testimony of appellee and his son, who were the only persons present when the accident occurred, the speed of the automobile at the time of the accident did not exceed twelve miles per hour; the left wheels of the car ran into the first rut or depression, and, before the driver could get it back onto the grade, they ran into

1. Municipal Corporations: streets: negligence: guard rails on bridge approach built by county.

the second rut, and the car was precipitated off the grade, partly overturning, and resulting in the injuries complained of. The concrete bridge located near the point of the accident was constructed by Hardin County in 1920, to replace a former bridge located a short distance west of the new structure. The elevation of the old bridge and of the grade in the street prior to its removal is not shown; but the approaches to the new bridge and the grade where the accident occurred were constructed and reconstructed by the county after the new bridge was completed. There were no bannisters or guard rails on either side of the grade.

At the close of appellee's testimony, appellant moved for a directed verdict, upon the grounds, among others, that no actionable negligence was shown, and that the accident was the result of the contributory negligence of appellee and his son, who was driving the car. The motion was overruled, and, when renewed at the close of all the testimony, was again overruled by the court. The contention of appellant on the two points mentioned will be first disposed of.

It is the duty of municipalities to maintain streets in a reasonably safe condition for travel. This does not mean that they are insurers of the safety of travelers upon the streets, but that they are bound to guard against ordinary contingencies, or such as might reasonably be apprehended to result from defects in the streets. *Harvey v. City of Clarinda,* 111 Iowa 528; *Parmenter v. City of Marion,* 113 Iowa 297; *Nocks v. Incorporated Town of Whiting,* 126 Iowa 405; *Bixby v. City of Sioux City,* 184 Iowa 89. The duty to maintain the streets in a reasonably safe condition for travel includes, when reasonably necessary, the erection of barriers or guard rails along grades and at other dangerous places. *Bixby v. City of Sioux City,* supra; *Miller v. Boone County,* 95 Iowa 5, 11; *Harvey v. City of Clarinda,* supra; *Byerly v. City of Anamosa,* 79 Iowa 204, 209. A traveler upon a public street has a right to assume that the municipality has performed its duty in the care and maintenance of its streets, and he is not, in the nighttime, required to be diligent to discover defects. *Frazee v. City of Cedar Rapids,* 151 Iowa 251; *Frohs v. City of Dubuque,* 169 Iowa 431. As indicated, the grade at the point where the accident occurred

was narrow, over seven feet high, and steep. A Ford automobile occupies a space of 4 feet and 8 inches. It being assumed that the traveled track was in the center of the grade, as was shown by the evidence, it was less than 2 feet from the south wheel track to the north side of the ruts or depressions in the grade. The evidence tended to show that the center line of the grade, where the accident occurred, was but about four feet north of the center of the bridge. It is no doubt true that vehicles could have been driven over the grade in question with safety, the smooth surface of the roadway being sufficient for that purpose; but the duty of the city extended somewhat further than this, and the jury must have found that, under all of the facts and circumstances shown in the evidence, the erection of barriers or guard rails was necessary for the reasonable protection and safety of travelers upon the street. We are of the opinion that the elevation and narrowness of the grade, together with the manner in which the south side was constructed, raised a question of fact, for the jury to determine: that is, whether it was the duty of the city, in the exercise of the care imposed upon it by the statute, to erect barriers or guard rails on the south side of the grade. The facts of this case are in some respects similar to the facts in *Harvey v. City of Clarinda,* 111 Iowa 528. We cannot hold, as a matter of law, that no such duty existed.

But it is argued by appellant that the grade in question was in fact nothing more nor less than an approach to the bridge, and that it was constructed by the county as such, in pursuance of the statute which requires it to construct all bridges therein, and that, if barriers or guard rails were essential, the duty of constructing the same was not upon appellant, but upon the county. Section 1508 of the Code of 1897 (Section 5947, Code of 1924) provides:

"Such portions of all roads as lie within the limits of any city or town shall conform to the direction and grade and be subject to all regulations of other streets in such town or city."

The roadway, whether constituting the approach to a bridge constructed by the county or not, was a part of the street which it was the duty of appellant, under Section 753 of the Code of 1897 (Section 5945, Code of 1924), to maintain

in a reasonably safe condition for travel. The duty thus imposed upon the city was not excused or in any way affected by the fact that the grade was constructed by the county, and constituted an approach to a bridge. *Frohs v. City of Dubuque,* 169 Iowa 431. Whether the cited case is decisive of the exact point raised by counsel or not, the duty of the city.to erect barriers within its jurisdiction wherever necessary for the reasonable protection and safety of travelers upon the streets thereof would seem to be clear, and beyond controversy. As bearing somewhat upon this question, see *Clark v. Town of Epworth,* 56 Iowa 462.

II.   Instead of pursuing the route indicated, which led appellee into Pierce Street at a point where it was but little used, he could have reached his home by going west and north from the packing plant over well lighted paved streets. He chose the former route, according to his testimony, because he desired to see a party living on, or somewhere near, Pierce Street. Evidence was introduced by appellant of alleged admissions of the son that the reason they pursued the route followed was that the lights of the automobile were in such bad condition that he feared arrest if he drove it on the lighted streets of the city. The making of these admissions was denied by young Whitlatch. The automobile was a 1915 model, and had been used extensively; and appellant claims that the lamps were without lenses, and that the reflectors were coated with rust. Evidence was also offered to show that a Ford car having only a magneto, with rusty reflectors, and without lenses, and operated at a speed of from eight to twelve miles per hour, will produce, at best, a very dim light. There was evidence that the lights could not be seen by two witnesses upon the highway, immediately prior to the accident. It is the contention of appellant that the lights on the automobile in no respect complied with the requirements of the statute, and that appellee was guilty of contributory negligence in driving the car on the street in question without proper lights, and under circumstances which prevented the driver from discerning objects or defects in the street, such as the ruts or depressions complained of.

It is further argued that appellee was negligent in driving

2. HIGHWAYS: negligence: driving on left-hand side.

the automobile on the left-hand side of the road, in violation of the statute which requires the drivers of motor vehicles in cities and towns to drive the same on the right-hand side of the street. Some claim is made that the driver did not have the automobile under control as it approached the bridge, and that, because of the dimness of the lights, he was unable to stop it within the distance he could see the street ahead of him.

One witness testified that the tracks of the automobile ran diagonally southwest across the grade from the north side of the bridge to the point where the left-hand wheels first went off the grade. The evidence on this point, as well as in regard to the condition and brilliancy of the lights on the automobile, is in conflict. Appellee and his son both testified that the lamps were in good condition; that they were equipped with lenses; that the reflectors were not rusted; and that they could see the roadway in front of them, except when the rays of light were cast above the surface, as they probably were after they crossed the bridge, so as not to clearly reveal the washouts in the street. The testimony of appellee was weakened to some extent by the cross-examination, during which he stated that he could see only the outlines of the grade. Both appellee and his son claimed that they were deceived to some extent by the presence of weeds on the grade, which had been cut off substantially level with the surface. Guy Whitlatch testified that, immediately after striking the first depression in the road, he attempted to steer the car onto the grade; but that, before this was fully accomplished, the wheels ran into the second depression, and the car went down the side of the grade, overturning, as stated above. It was the duty of appellee to see that his automobile was equipped with lights such as are required by statute, and to drive on the right-hand side of the street; but, to defeat recovery, it must further appear that his failure to observe these requirements contributed to his injury. *Spiker v. City of Ottumwa,* 193 Iowa 844; *Baker v. Zimmerman,* 179 Iowa 272; *Napier v. Patterson,* 198 Iowa 257. The margin between the north and south sides of the grade with the traveled track in the center was small; and while, if the driver had kept to the north side, the accident would not have occurred, we think it was a question for the jury to determine as to whether the automobile was equipped

with proper lights, and whether any violation of the statute as to lights and his duty to drive on the right side of the street contributed to the accident: that is, whether causal connection between the accident and the failure to observe the statute was shown. There was other evidence from which the jury might possibly have found that the driver was guilty of contributory negligence; but it was in dispute. The finding of the jury that the proximate cause of the injury was the failure to maintain proper barriers or guard rails at the point in question finds support in the evidence. There was no evidence that the driver failed to approach the bridge with the car under control, or that he drove it at an improper rate of speed.

III.  It is further argued by appellant that the court erred in failing to instruct the jury that it was incumbent upon appellee to prove that appellant had notice of the defect complained of, and that, even conceding that it was the duty of the city to have erected barriers or guard rails, as contended by appellee, the failure to do so was not the proximate cause of the injuries complained of. This was the only issue of negligence submitted to the jury. The court withdrew all other allegations of negligence from the jury, and no question was submitted as to the presence of the ruts or depressions in the street. The defect, therefore, complained of was not one arising after the street has been placed by the city in a reasonably safe condition for travel, in which case actual notice to the city must be shown, or facts from which notice will be presumed, in order to charge the city with liability. If, however, the defect is in the original construction of the street or the failure of the city to perform a positive duty, notice will be conclusively presumed. *Evans v. City of Iowa City,* 125 Iowa 202; *Spiker v. City of Ottumwa,* 193 Iowa 844; *Roney v. City of Des Moines,* 150 Iowa 447; *Evans v. City of Council Bluffs,* 187 Iowa 369.

3. MUNICIPAL CORPORATIONS: streets: non-necessity to show notice of defect.

The city did not construct the grade; but, under the evidence, it was a question of fact for the jury to determine whether it was its duty, in the exercise of reasonable care, to have known that barriers or guard rails at the point in question were essential for the protection and safety of the public, and to have erected the same. The defect on the part of the city was not

in the original construction of the grade, but, as found by the jury, in its failure to perform its duty and construct the necessary barriers to prevent the happening of such accidents as might reasonably have been apprehended. The court did not, therefore, err in failing to instruct on the question of notice.

With reference to the question of proximate cause, little need be said. In the first place, the law is well settled that:

"When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate,—the one being a culpable defect in the highway, and the

4. NEGLIGENCE: proximate cause: combination of causes.

other some occurrence for which neither is responsible,—the municipality is liable, provided the injury would not have been sustained but for such defect." *Walrod v. Webster County*, 110 Iowa 349.

See, also, *Overhouser v. American Cereal Co.*, 118 Iowa 417; *McGee v. Jones County*, 161 Iowa 296; *Byerly v. City of Anamosa*, 79 Iowa 204; *Gould v. Schermer*, 101 Iowa 582.

It was a question for the jury to decide whether the failure of the city to erect barriers or guard rails was the proximate cause of the injury: that is, whether, but for the omission on the part of the city, the accident would not have happened.

IV. Complaint is also made of the refusal of the court to give Requested Instruction No. 3, and of certain paragraphs of the charge given by the court on its own motion. The requested instruction referred to presented the theory of appellant that it was the duty of the county, if of anyone, to erect barriers or guard rails, and not of appellant. What we have already said disposes of all questions raised by this instruction. The complaint of Paragraphs 2 and 3 of the court's charge relates to the subject of notice, and is answered by what we have said above on that subject. Paragraph 11 of the court's charge to the jury, which dealt with the duty of appellee to drive the automobile on the right-hand side of the road, is somewhat involved, and may not have been entirely clear to the jury. But it can hardly be said that it was misleading or confusing. The court properly instructed the jury that the mere fact that the driver of the car was on the left-hand side of the grade was not such negligence as would alone defeat recovery. The duty of the driver to exercise reasonable care and caution in the opera-

tion of the automobile and to drive on the right side of the street was emphasized by the court; and, on the whole, we are of the opinion that the issues were fairly and intelligently submitted to the jury. We have not set out or discussed all of the evidence favorable to the contentions of appellant. Because of the fact that it is in conflict on all material matters, we have not deemed it necessary to go more fully into the details.

V. The court permitted the jury to view the premises, to which they were taken in separate conveyances, in charge of separate officers. The record does not show whether they were all at the place of the accident at the same time or not, or whether the only separation was for the purpose of convenience in going to view the premises. The authority of the court to permit the jury to view real property or the place at which any material fact occurred, is conferred by Section 3710 of the Code of 1897 (Section 11496, Code of 1924). This statute requires them to be taken in a body. That the statute is of such an imperative character as to require a reversal upon the ground that the jury were taken in charge of separate officers, in separate conveyances, where no prejudice is shown, does not appeal to us. No prejudice is shown to have resulted. The purpose to give the jury an opportunity to view the premises was accomplished; and, in the absence of some showing of prejudice, we think that the failure to strictly observe the statute in this simple particular does not justify a reversal of the judgment below. Counsel for appellant did not, in terms, consent to the order permitting the jury to view the premises; but they did insist that the jurors should be kept together, and taken in one conveyance. The court directed that this be done, if appellant insisted, upon condition that they bear the expense of securing a conveyance suitable for that purpose. We doubt the propriety of the court's order. The court should always be very careful in discussing questions in the presence of the jury that might in any way tend to prejudice either litigant; but we think that the record in this case does not show such prejudice as to call for a reversal.

5. TRIAL: conduct of trial: separate viewing of premises by jury.

The only other matter discussed by counsel requiring notice is that the verdict is the result of passion and prejudice. It is sufficient on this point to say that we find nothing in the record

to sustain this contention. We find no reversible error in the record, and the judgment below is—*Affirmed.*

ARTHUR, C. J., and PRESTON, FAVILLE, and VERMILION, JJ., concur.